**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **RUCHI RAJESH GUPTE**,<br><br>Plaintiff,<br><br>v.<br><br>**MARKWAYNE MULLIN**, *et al.*,<br><br>Defendants. | Case No. 1:26-cv-00445 (TNM) |

**MEMORANDUM OPINION**

Ruchi Rajesh Gupte applied for an immigrant investor visa under the EB-5 program. She did not hear back for more than 19 months, so she sued several senior officials to compel them to promptly adjudicate her petition. The problem with Gupte's claims is that this Court lacks subject matter jurisdiction over them, as dictated by the Immigration and Nationality Act. Lacking jurisdiction over the case, the Court will dismiss it without addressing the merits.

**I.**

The EB-5 program "permits noncitizens to apply for permanent residence in the United States by investing in approved commercial enterprises that are based on proposals for promoting economic growth." *Liu v. SEC*, 591 U.S. 71, 77 (2020) (cleaned up). Obtaining an EB-5 visa requires the immigrant to "creat[e] full-time employment for not fewer than 10 United States citizens, United States nationals, or aliens lawfully admitted for permanent residence or other immigrants lawfully authorized to be employed in the United States." 8 U.S.C. § 1153(b)(5)(A)(ii). To that end, the immigrant must invest at least $1,050,000 generally or $800,000 "in a targeted employment area or in an infrastructure project." *Id.* § 1153(b)(5)(C)(i)–(ii).

The EB-5 process begins with a Form I-526E petition for classification as an immigrant investor, which the immigrant submits to U.S. Citizenship and Immigration Services ("USCIS"). *See* 8 C.F.R. § 204.6(a). Once USCIS approves that petition, the immigrant may apply for two-year conditional lawful permanent residence through Form I-485. *See* 8 U.S.C. § 1186b(a)(1), (b)(1); 8 C.F.R. § 216.1. At the end of that two-year period, the immigrant may finally apply for unconditional permanent residence via Form I-829. *See* 8 U.S.C. § 1186b(c)(3)(B)(i)(II); 8 C.F.R. § 216.6(d)(1).

Gupte "is a national of India" who "seeks an EB-5 visa based on [her] qualifying investment under the EB-5 program." Pet., ECF No. 1, ¶ 10. She invested more than $800,000 "into New Commercial Enterprise, created to fund [a] development located in Philadelphia, PA." *Id.* ¶ 21. In June 2024, Gupte filed an I-526E petition "along with substantial documentation relating to the Company and [its] lawful source and path of investment funds." *Id.* ¶ 22.

More than 19 months passed without Gupte receiving a decision or "any meaningful feedback" on her I-526E petition. *Id.* ¶ 29. Fed up with the delay, Gupte sued several senior officials in the Department of Homeland Security (collectively, "the Department"). *Id.* ¶¶ 11–13. Her claims under the Administrative Procedure Act and Mandamus Act seek to compel the Department "to perform [its] non-discretionary duty and adjudicate the Petition." *Id.* at 23; *see id.* ¶¶ 35–100.

The Department moves to dismiss Gupte's action for lack of subject matter jurisdiction under Rule 12(b)(1). Mot. Dismiss, ECF No. 13, at 7. Gupte opposes the Department's motion to dismiss and cross-moves for summary judgment. Opp'n & Cross-Mot. Summ. J., ECF No. 14. The parties' motions are ripe for this Court's consideration.

## II.

"Federal courts are courts of limited jurisdiction," and it is "presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). To survive a motion to dismiss under Rule 12(b)(1), "[t]he plaintiff bears the burden of invoking the court's subject matter jurisdiction." *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015). In deciding a Rule 12(b)(1) motion, the Court "may consider materials outside the pleadings" but must "accept all of the factual allegations in the complaint as true." *Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253–54 (D.C. Cir. 2005) (cleaned up). Although the Court presumes that agency action is reviewable, that presumption is "overcome by clear and convincing evidence of congressional intent to preclude judicial review." *Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 229 (2020) (cleaned up). If the Court determines that it lacks jurisdiction, it must dismiss the case. Fed. R. Civ. P. 12(h)(3).

For cases within the Court's jurisdiction, "[s]ummary judgment serves as the mechanism for deciding, as a matter of law, whether the agency action is . . . consistent with the APA standard of review." *AID Atlanta, Inc. v. HHS*, 340 F. Supp. 3d 1, 4 (D.D.C. 2018) (cleaned up). To win summary judgment, a movant must establish that "there is no genuine dispute as to any material fact and [that he] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## III.

Gupte invokes the Administrative Procedure Act and the Mandamus Act. The APA empowers courts to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). The Mandamus Act confers jurisdiction over actions "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. "[T]he standards for obtaining relief are essentially the same" under both

statutes. *See Vietnam Veterans of Am. v. Shinseki*, 599 F.3d 654, 659 n.6 (D.C. Cir. 2010); *accord In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008).

Gupte's claims falter at the outset because the Immigration and Nationality Act ("INA") strips the Court's subject matter jurisdiction over them. The Court recently held as much in another unreasonable delay case involving an I-526E petition. *See Rayan v. Mullin*, No. 1:26-CV-00824 (TNM), 2026 WL 2823582, at *1 (D.D.C. Sept. 21, 2026). The Court's analysis here tracks its reasoning there.

Two INA provisions remove the Court's jurisdiction over this case. The first divests jurisdiction over various immigration decisions, including "any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title." 8 U.S.C. § 1252(a)(2)(B)(i). More importantly here, the provision also reaches "any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title." *Id.* § 1252(a)(2)(B)(ii). With this "catchall," Congress "insulated from judicial review" any action "made discretionary by legislation" under Subchapter II of Chapter 12 of Title 8, 8 U.S.C. §§ 1151–1381. *See Kucana v. Holder*, 558 U.S. 233, 246–47 (2010) (footnote omitted). That is where the other provision comes into play: It declares that the Secretary of Homeland Security "may process [I-526E] petitions in a manner and order established by the Secretary." 8 U.S.C. § 1153(b)(5)(E)(ii)(II).

In tandem, these two provisions constitute "clear and convincing evidence of congressional intent to preclude judicial review" of Gupte's claims. *See Guerrero-Lasprilla*, 589 U.S. at 229 (cleaned up). "A statute affecting federal jurisdiction must be construed both with

precision and with fidelity to the terms by which Congress has expressed its wishes." *Kucana*, 558 U.S. at 252 (cleaned up); *see also Lloyd v. Ingenuity Prep Pub. Charter Sch.*, 368 F. Supp. 3d 25, 27 (D.D.C. 2019) ("As in any statutory construction case, we start, of course, with the statutory text, and proceed from the understanding that unless otherwise defined, statutory terms are generally interpreted in accordance with their ordinary meaning." (cleaned up)). Here, the text supports only one conclusion: that the Court lacks subject matter jurisdiction over Gupte's unreasonable delay claims about her I-526E petition.

Recall first the catchall, which strips jurisdiction over "any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in [their] discretion." 8 U.S.C. § 1252(a)(2)(B)(ii). As the Supreme Court "has repeatedly explained, the word 'any' has an expansive meaning." *Patel v. Garland*, 596 U.S. 328, 338 (2022) (cleaned up).

In its breadth, the catchall embraces the provision on I-526E petitions—which, recall, states that the Secretary of Homeland Security "may process petitions in a manner and order established" by him. 8 U.S.C. § 1153(b)(5)(E)(ii)(II). That provision is a plain grant of discretion. *See Bouarfa v. Mayorkas*, 604 U.S. 6, 13–14 (2024) ("As this Court has repeatedly observed, the word 'may' *clearly* connotes discretion." (cleaned up)). And the Secretary's discretion extends to the "manner and order" in which to "process [I-526E] petitions." 8 U.S.C. § 1153(b)(5)(E)(ii)(II). That language covers Gupte's unreasonable delay claims.

In short, two INA provisions work together to strip this Court's jurisdiction over Gupte's action. Although no circuit has ruled on this jurisdictional issue, multiple circuits have held that the INA precludes jurisdiction over unreasonable delay suits targeting I-485 applications, step two in the EB-5 process. *See Kanapuram v. Dir., USCIS*, 131 F.4th 1302, 1306–07 (11th Cir.

2025) (collecting cases); *see also, e.g.*, *Cheejati v. Blinken*, 106 F.4th 388, 394 (5th Cir. 2024) ("Section 1255(a) expressly leaves not only the ultimate *decision* to adjust an applicant's immigration status but also actions taken in the course of the decision-making *process*—including the pace at which that process is undertaken—to the discretion of the Attorney General . . . ."). The relevant companion provision there states that an immigrant's permanent residence status "may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe." 8 U.S.C. § 1255(a). The Court finds these appellate opinions instructive; if anything, the INA's reference here to the "manner and order" of processing I-526E petitions is an even plainer grant of discretion over the pace of adjudication. *See* 8 U.S.C. § 1153(b)(5)(E)(ii)(II); *see also Zhu v. Gonzales*, 411 F.3d 292, 294–95 (D.C. Cir. 2005) (holding "that a decision may be 'specified . . . to be in the discretion of the Attorney General' even if the grant of authority to make that decision does not use the word 'discretion'" (quoting 8 U.S.C. § 1252(a)(2)(B)(ii))).

In sum, this Court concludes that it lacks jurisdiction over Gupte's suit. That holding results from "the text and context" of § 1252(a)(2)(B)(ii)—"which is, after all, a jurisdiction-stripping statute"—paired with the provision that grants the Department discretion in processing I-526E petitions. *See Patel*, 596 U.S. at 347. "The plain meaning of th[ose] provision[s], not any interpretative presumption, drives [the Court's] conclusion today." *See id.*

To contest this conclusion, Gupte advances the same arguments that the plaintiff raised in *Rayan*. *See Rayan*, 2026 WL 2823582, at *5. The Court rejects them again.

Consider first the EB-5 Reform and Integrity Act of 2022, which directs USCIS to "complete a study of fees charged in the administration of the [EB-5] program." Pub. L. No. 117-103, § 106(a), 136 Stat. 49, 1103–04 (Mar. 15, 2022). The Act also instructs USCIS to set

fees "at a level sufficient to," among other things, "attain[] the goal of completing adjudications, on average, not later than" 240 days after receiving an I-526E petition. *Id.* at 1104. As Gupte sees it, this "specific processing time goal[]" is a "mandate" that overrides the Department's discretion. Opp'n & Cross-Mot. Summ. J. at 2.

That argument does not work. The congressional directive is about fees, and its processing "goal" speaks only to averages, not any particular adjudication. This is not enough to overcome the INA's clear grants of discretion, let alone to impose an enforceable deadline for adjudicating Gupte's I-526E petition. *See Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 344 (D.C. Cir. 2023) (concluding that similar language was "insufficient to set a deadline").

Gupte also maintains that the Department's "failure to act is not a discretionary 'decision or action' within the meaning of the statute, and [the Department] therefore cannot rely on § 1252(a)(2)(B)(ii) to avoid review of [its] delay." Opp'n & Cross-Mot. Summ. J. at 3. The text foils that argument. Once again, the catchall reaches "any other decision or action" that the relevant INA subchapter makes discretionary. *See* 8 U.S.C. § 1252(a)(2)(B)(ii). That language embraces the process of adjudicating visas—not just the final decision—especially since the catchall's predecessor already covers "any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title." *See id.* § 1252(a)(2)(B)(i). For confirmation, look one last time to § 1153(b)(5)(E)(ii)(II), which confers discretion over the "manner and order" in which to "process [I-526E] petitions." *Id.* § 1153(b)(5)(E)(ii)(II). That language includes the pace of adjudication, and it strips the Court's jurisdiction over Gupte's suit.

## IV.

When jurisdiction is absent, "the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (quoting *Ex parte McCardle*, 74 U.S. 506, 514 (1868)).[1] This Court lacks subject matter jurisdiction over Gupte's claims of unreasonable delay in adjudicating her I-526E petition. It thus will dismiss Gupte's case for lack of jurisdiction and deny her cross-motion for summary judgment. A separate Order will issue today.

2026.09.29
14:43:04 -04'00'

Dated: September 29, 2026 TREVOR N. McFADDEN, U.S.D.J.

[1] The Court thus does not address the Department's Rule 12(b)(6) argument that Gupte fails to state a plausible claim of unreasonable delay. *See* Mot. Dismiss at 7.